# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOHN D. KICK,

        Plaintiff,

v.                                                       Case No. 07-C-697

ROBERT D. CARLSON and JOHN DOE,
sued as all Racine County Commissioners,

        Defendants.

## ORDER

The plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 and was granted leave to proceed *in forma pauperis*.[1] He is proceeding on due process claims that he was denied recreation, forced to sleep on the floor in a three-man cell meant for one inmate, and subjected to poor ventilation while detained at the Racine County Jail. He is also proceeding on an equal protection claim that he was denied religious and rehabilitation services due to his indigency. Before the court are the plaintiff's motion for summary judgment and the defendants' cross-motion for summary judgment.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is

---

[1] The complaint was filed by two plaintiffs, Kick and James H. Davis. However, on October 30, 2007, the court dismissed Davis for failure to prosecute.

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial – (1) the absence of a genuine issue of material fact; and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Id.* at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e) ("When a summary judgment motion is made and supported as provided in [Rule 56(c),] an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavit or otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial"). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989). "However, we are not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citation omitted).

**FACTS**[2]

The plaintiff was confined as a pretrial detainee in the Racine County Jail (RCJ) from June 14, 2007 until August 26, 2007. (Affidavit of John Hanrahan [Hanrahan Aff.] ¶ 2, Ex. A).[3] During this period of time, the plaintiff was housed as follows:

1. June 14 at 15:12 until 18:29, Bullpen 2 of the old Jail intake;
2. June 14 at 18:29 until June 15 at 16:40, 2B15 L (lower bunk bed);
3. June 15 at 16:40 until June 16 at 05:46, 4D34 F (mattress on the floor of a 3-man cell);
4. June 16 at 05:46 until July 15 at 2052, 4D34 U (upper bunk bed);
5. July 15 at 16:40 until August 26 at 22:55, 4D34 L (lower bunk bed).

*Id.* Due to space and capacity limitations, inmates are sometimes triple-celled at the RCJ and only when necessary. (Hanrahan Aff. ¶ 17). Inmates required to sleep on the floor are given a mattress, two sheets, and a blanket. *Id.*

---

[2] This section is taken from the Defendants' Proposed Findings of Fact.

[3] Captain John Hanrahan is an employee of Racine County, is assigned to duty at the Racine County Jail, and has knowledge of the facts relevant to this litigation. (Hanrahan Aff. ¶ 1).

-3-

Case 2:07-cv-00697-JPS   Filed 02/06/09   Page 3 of 14   Document 43

During the time period relevant to this litigation, the plaintiff was placed in a segregated "indigent pod" due to his status as an indigent.[4] (Hanrahan Aff. ¶ 6). Indigent pods are utilized to maintain the security and stability of the jail as well as for the protection of indigent inmates who are easily taken advantage of by inmates with, relatively speaking, substantial means. Indigent inmates housed in segregated indigent pods are afforded the same programming offered to all non-segregated inmates. (Hanrahan Aff. ¶ 13). Such programming includes: Alcohol and Other Drug Abuse, Bible Study, Alcoholics Anonymous, One On One Mentoring, GED tutoring, High School Equivalency tutoring, Life Skills training, Self Esteem seminars, Anger Management training, Library Services, Worship Services, Literacy Help, Pre/Post Release Programs, and Children's First. The plaintiff, while segregated in an indigent pod at the RCJ, was afforded the same access to all of the above-mentioned programs. (Hanrahan Aff. ¶ 14).

The RCJ does not offer organized outdoor or gymnasium recreation or exercise due to staffing and security necessities. (Hanrahan Aff. ¶ 7). However, all RCJ inmates, including those segregated into indigent pods, are permitted to recreate within the living units and/or day rooms. (Hanrahan Aff. ¶ 9). Inmates are permitted to, among other things, walk or run in place, do sit-ups and push-ups, walk around the day room, perform jumping jacks, and stretch. (Hanrahan Aff. ¶ 10). There is no limit on the amount of exercise in which inmates are allowed to engage.

---

[4] Indigent pods are also utilized to house inmates with a history of stealing from the RCJ vending machines.

-4-

The plaintiff was permitted to recreate within the living units and/or day rooms and he was permitted to engage in all recreation activities as other inmates. (Hanrahan Aff. ¶¶ 8, 11). There were no restrictions on the amount of exercise and/or recreation he could perform. (Hanrahan Aff. ¶ 9).

Inmates are not ordinarily restricted to their respective cells. (Hanrahan Aff. ¶ 15). Rather, they are usually free to spend their days outside of their cells within the day rooms of the RCJ. Likewise, the plaintiff was not restricted to his cell; while incarcerated, he was free to spend his days outside of his assigned cell within the day rooms of the RCJ. (Hanrahan Aff. ¶ 16). The majority of the time spent within his cell was for the purpose of sleeping.

The majority of the plaintiff's incarceration was spent housed in the RCJ D-Wing. (Hanrahan Aff. ¶ 2, Ex. A). At the time of the plaintiff's incarceration, the RCJ D-Wing ventilation system had its own air handling unit. (Affidavit of Karl Jeske [Jeske Aff.] ¶ 2).[5] This unit was responsible for the handling in all three housing units of D-Wing, as well as the intake and office areas. The air breathed by both inmates and RCJ staff is supplied by the same ventilation system/air handling unit. The unit is regularly maintained by planned quarterly preventive maintenance, which includes checking belts, greasing and changing filters. (Jeske Aff. ¶ 3). Major ventilation cleaning occurred in 1998 and 2003, and the Racine County Public Works Department is currently taking bids on another round of extensive cleaning of the

---

[5] Karl Jeske is an employee of Racine County and has knowledge of the facts relevant to this litigation. (Jeske Aff. ¶ 1).

-5-

unit. (Jeske Aff. ¶ 4). Housekeeping-type cleaning of the air grille faces within the cells is done by bail trustees and/or inmates. (Jeske Aff. ¶ 5). The plaintiff did not report any injury to, nor was he treated for any injury by, RCJ resulting from the allegedly dirty ventilation system. (Hanrahan Aff. ¶ 3, Ex. B). The only medical complaint/request the plaintiff made during his incarceration at the RCJ during the relevant time period was for dry skin cream/ointment and said request was granted.

## ANALYSIS

**A.    Plaintiff's Motion for Summary Judgment**

The plaintiff's motion for summary judgment consists of a two-page document which appears to be a response to affirmative defenses in the defendants' answer that this action should be dismissed. The plaintiff asserts that he believes he has established grounds for summary judgment based on the facts set forth in the complaint and subsequent filings. He also requests that "the court set this action for trial by jury on all issues triable herein." (Pl.'s Mot. for Summ. J. at 2). The motion does not include any proposed facts or other supporting materials.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Although the plaintiff's complaint is sworn and, therefore, the court may construe it as an affidavit at the summary judgment stage, *Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996), a "[p]laintiff may not rely only on the bare assertions of his pleadings." *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th

Cir. 2008) (quoting *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 651 (7th Cir. 2006)). The plaintiff's motion for summary judgment, which argues that he is entitled to summary judgment and also that this case should be set for trial and which does not include any proposed fact or supporting materials, does not establish that he is entitled to summary judgment. Thus, the motion will be denied.

**B.    Defendants' Motion for Summary Judgment**

The defendants contend that the plaintiff's due process and equal protection claims are without merit and that they are entitled to summary judgment on all claims. The plaintiff's response does not object to any of the defendants' proposed findings of fact and he did not submit any otherwise admissible evidence. Rather, the plaintiff asserts that, "[i]t is clear that the defendant[s] . . . violated and discriminated the plaintiff's constitutional rights when he was banished to the 'broke pod,' due to his indigent status." (Pl.'s Resp. at 2). He also asserts that segregating a person based on economic status "should not and cannot be tolerated in this day and age." *Id.* The plaintiff further states that an additional material fact exists which shows that he was forced to sleep on the floor, being the third person in a single man cell, although he does not state what that fact is.

### 1.    Due Process Claims

Since he is a pretrial detainee, the plaintiff's challenge to his conditions of confinement is governed by the constitutional guarantee of due process, rather than the Eighth Amendment, which is applicable to convicted prisoners. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hart v. Sheahan*, 396 F.3d 887, 891 (7th Cir.

-7-

2005). The proper question to guide determination of the constitutionality of restrictive conditions in pretrial detention is "whether those conditions amount to punishment of the detainee." *Hart*, 396 F.3d at 891 (quoting *Bell*, 441 U.S. at 535). "'Punishment' in such a case is really just a name for unreasonably harsh treatment meted out to inmates who have not yet been convicted of any crime." *Id.* at 892. For example, in *May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000), a case concerning the conditions in which inmates were held in the Cook County Jail, the court stated that "the use of bodily restraints constitutes punishment in the constitutional sense if their use is not rationally related to a legitimate non-punitive government purpose or they appear excessive in relation to the purpose they allegedly serve."

To determine whether a condition is punitive or simply an incident of some legitimate government purpose, the Supreme Court noted that the "effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial confinement and dispel any inference that such restrictions are intended as punishment." *Bell*, 441 U.S. at 540. In assessing whether the conditions are reasonably related to the assigned purposes, the court must further inquire as to whether these conditions "cause [inmates] to endure [such] genuine privations and hardship over an extended period of time" that the adverse conditions become excessive in relation to their assigned purposes. *Id.* at 542.

In this case, the plaintiff alleges that he was forced to sleep on the floor of a cell designed for one person and otherwise triple-celled for a portion of his

-8-

incarceration at the RCJ. It is undisputed that the plaintiff was assigned to sleep on a mattress on the floor in a cell with two other inmates from June 15, 2007, at 16:40 until June 16, 2007, at 05:46. The total amount of time that the plaintiff was classified as being housed in a unit with a sleeping assignment designated as the floor totals thirteen hours and six minutes. It is also undisputed that due to space and capacity limitations, inmates are sometimes triple-celled at the RCJ and only when necessary, and that inmates required to sleep on the floor are given a mattress, two sheets, and a blanket.

In *Stephens v. Cottey*, 145 Fed. Appx. 179, 180-81 (7th Cir. 2005) (unpublished), the Seventh Circuit Court of Appeals held that there was no constitutional violation where a prisoner, during his eight-day detention at the Marion County Jail, spent three days with no mattress, sleeping directly on the metal bedframe, and five days with no bedframe, sleeping on a mattress on the floor. The court reasoned that the prisoner failed to prove that he suffered an "extreme" deprivation. *Id.* at 181 (citing *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001)). The court stated:

> As is the case under the Due Process Clause, a short-term deprivation is less serious for Eighth Amendment purposes than a long-term one. *Tesch v. County of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Sleeping for three days on a bedframe without a mattress is not extreme, *see Johnson v. Pelker*, 891 F.2d 136, 138-39 (7th Cir. 1989), and neither is sleeping for five days on a mattress without a bedframe, *Rodgers v. Thomas*, 879 F.2d 380, 383-84 (8th Cir. 1989). *See also Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986) (the Constitution does not require elevated beds for prisoners); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (same). *But cf. Lyons v. Powell*, 838

-9-

> F.2d 28, 31 (1st Cir. 1988) (pretrial detainee stated a claim by alleging
> that he had to sleep on a mattress on the floor for 27 days).

*Id.* *See also Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (the fact that an inmate had to temporarily sleep on a mattress on the floor or on a table due to overcrowding is not necessarily a constitutional violation); *Desroche v. Strain*, 507 F. Supp. 2d 571, 579-80 (E.D. La. 2007) (pretrial detainee's complaint that the holding tank was overcrowded and that he had to sleep on the floor for ten days in the crowded holding tank fails to state a constitutional violation); *Hubbard v. Taylor*, 452 F. Supp. 2d 533, 541-42 (D. Del. 2006) (providing temporary sleeping accommodations on the floor for pre-trial detainees in response to overcrowding does not establish action to be punitive on its face); *Askew v. Fairman*, 880 F. Supp. 557, 562 (N.D. Ill. 1995) (no violation when detainee was forced to sleep on the floor on many occasions over two year period).

The plaintiff in this case was required to spend one night sleeping on the floor on a mattress at the RCJ. There is no indication that the plaintiff's cell assignment was based on punitive reasons. Rather, it is undisputed that, due to jail space and capacity limitations, inmates are occasionally triple-celled or required to sleep on the floor. In short, the plaintiff's allegations regarding his thirteen-hour cell assignment to 2B15 L and unspecified occasional but necessary "triple-celling," fall far short of a constitutional violation.

Next, the plaintiff claims that the RCJ did not provide him or other inmates with regular recreation. Lack of exercise may rise to a constitutional violation in certain

limited circumstances "where movement is denied and muscles are allowed to atrophy [and] the health of the individual is threatened." *Thomas v. Ramos*, 130 F.3d 754, 763 (7th Cir. 1997) (quoting *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985)). However, prisoners do not have a constitutional right to receive their recreation outside. *Thomas v. Ramos*, 130 F.3d 754 (7th Cir. 1997); *see also Caldwell v. Miller*, 790 F.2d 589, 600 (7th Cir. 1986) (Eighth Amendment not violated when an inmate was confined to his cell twenty-four hours day and denied all outside and indoor exercise privileges for a month, followed by a six-month period of confinement in a cell for twenty-three hours a day with only one hour of daily indoor exercise).

In this case, the undisputed facts reveal that the plaintiff was not denied recreation. Rather, he was afforded daily opportunities to recreate in the day room where RCJ inmates spend most of their non-sleeping hours. Although the plaintiff may have preferred more organized recreation, or outside recreation, the Constitution does not mandate such opportunities. Accordingly, the plaintiff's denial of recreation claim must fail.

Next, the plaintiff claims that there was poor ventilation in his cell and that he was forced to breathe air from filthy vents. A constitutional right to adequate ventilation exists, which, while not assuring the right to be free from all discomfort, will be violated if inadequate ventilation can be considered as constituting punishment of pretrial detainees. *Board v. Farnham*, 394 F.3d 469, 485-86 (7th Cir. 2005). In *Board*, two pretrial detainees alleged that the flow of black fiberglass dust

into cells caused numerous nosebleeds and respiratory problems for them and other inmates. *Id.* at 486. One pretrial detainee also alleged that the poor ventilation system exacerbated his serious asthma condition, which was compounded by the denial of his medication and resulted in his being hospitalized and put on a breathing machine. *Id.* The court found that these allegations - a direct physical manifestation of the harm caused by the poor ventilation, as well as the quite likely possibility for future health problems - satisfied the objective prong of an Eighth Amendment violation. *Id.* The court also found that the plaintiffs' allegations satisfied the deliberate indifference prong:

> The Boards also claim that Jail officials were deliberately indifferent to their plight. As evidence of this they cite the affidavit of a heating contractor who visited the Jail and gave an opinion on the state of the ventilation system and repairs that needed to be done. In his opinion, the duct system in the Jail was contaminated with black mold and fiberglass liner and was a health hazard that needed replacement. However, the Boards contend that Farnham decided not to properly repair the problem, but instead only tried to mask the symptoms of the problem by performing a flimsy, non-productive band-aid procedure of merely vacuuming the grates. This, in spite of the fact that the private contractor/inspector, Richard Walker, specifically testified that he told Farnham that the duct work system needed to be replaced in order to cut down on the risk of disease and that if the duct system could not be replaced immediately the Jail, at least, needed to "clean the entire ductwork system, not simply where the air comes out."

*Id.*

The facts of this case stand in sharp contrast to those in *Board*. In this case, it is undisputed that in the ventilation system in the RCJ's D-Wing, where the plaintiff was housed the majority of the time, had its own air handling unit that was responsible for the handling in all three housing units of the D-Wing, as well as the

intake and office areas. The air handling unit is regularly maintained by planned quarterly preventive maintenance including checking belts, greasing, and changing filters. Major ventilation cleaning occurred in 1998 and 2003, and the Racine County Public Works Department is taking bids on another round of extensive cleaning. Housekeeping-type cleaning of the air grille faces within the cells is done by bail trustees and/or inmates. It is undisputed that the plaintiff did not report any injury to the RCJ medical staff resulting from allegedly dirty ventilation system and that he was not treated for any injury resulting from any alleged problem with the ventilation system. Based on these undisputed facts, no reasonable factfinder could conclude that a constitutional violation occurred and therefore, this claim will be dismissed.

### 2. Equal Protection Claims

The plaintiff's equal protection claim is based on complaint allegations that he was banished to a "broke pod" and was, as a result, denied rehabilitation and religious services. Specifically, the plaintiff alleged: "Religious Services/A.A./N.A. Meetings - These services don't appear to be available to those inmates confined to the 'broke pod.'" (Compl. ¶ IV. 10). In the prison context, the Equal Protection Clause of the Fourteenth Amendment requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest. *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000) (citing *Hudson v. Palmer*, 468 U.S. 517, 523 (1984)).

It is undisputed that, while the RCJ does not have "broke pods," it does have indigent pods into which indigent inmates are segregated based on jail security and

-13-

safety reasons. It is also undisputed that indigent inmates segregated into indigent pods are afforded the same recreation and programming opportunities as inmates not segregated into indigent pods. It is further undisputed that the plaintiff was afforded the same programming opportunities as inmates not segregated in indigent pods. Based on the foregoing, the plaintiff's equal protection claim must be dismissed.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for summary judgment (Docket #29) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket #32) be and the same is hereby **GRANTED**, and plaintiff's complaint be and the same is hereby **DISMISSED** with prejudice together with costs as taxed by the clerk of the court.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 6th day of February, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge